UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASCOT VALLEY FOODS, LTD.,

                    Plaintiff,

         v.

ADF FOODS (USA), LTD.,

                    Defendant.

22 Civ. 2655

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Ascot Valley Foods, Ltd. ("Plaintiff" or "Ascot Valley") brings this case against Defendant ADF Foods (USA), Ltd. ("Defendant" or "ADF"), alleging claims under New York law for breach of contract, promissory estoppel, and account stated.  ADF moves for summary judgment, seeking dismissal of all claims.  ECF No. 108.  Ascot Valley cross-moves for partial summary judgment granting its claim for account stated as to five invoices regarding products that it manufactured and shipped to ADF, but for which it never received payment.  ECF No. 111.  For the reasons stated below, the cross-motions are **DENIED.**

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and evidentiary submissions with their cross-motions.  The facts are either undisputed or, if disputed, resolved in the light most favorable to the non-moving party, with all reasonable inferences drawn in its favor. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).

### I.    The Co-Pack Agreement

On July 29, 2015, ADF and Ascot Valley's predecessor-in-interest, Ascot Valley Foods, LLC, entered into a Co-Pack Agreement to produce certain frozen food products, namely, "meatless meatballs."  *See* Def.'s Resp. to Pl.'s Stmnt. of Undisputed Material Facts ("Def.'s Resp.

to Pl.'s Rule 56.1 Stmnt.") ¶ 1, ECF No. 116; Def.'s Mem in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 3, ECF No. 109.  In substance, the Co-Pack Agreement provided that Ascot Valley would manufacture, package, and ship orders of these products to ADF, using ADF's proprietary recipes.  ADF committed to a minimum number of orders per year, and Ascot Valley agreed not to use ADF's proprietary information to produce products for ADF's competitors.

Under Paragraph 1 of the Co-Pack Agreement, the parties agreed to the following:

Co-Packer [Ascot Valley] agrees to manufacture, produce, package, store, pick for shipment and stage for shipment for, and sell to, Company [ADF], and Company agrees to purchase from Co-Packer, the products listed in Exhibit A attached hereto (the "Products") on a product-by-product basis as Company shall reasonably request. Co-Packer shall manufacture, produce and package the Products in compliance with the specifications attached hereto as Exhibit B (the "Specifications")."

Def.s' Resp. to Pl.'s Rule 56.1 Stmnt. ¶ 3 (quoting Co-Pack Agreement, Potter Decl., Ex. A, ¶ 1, ECF No. 117-1).

Paragraph 2 of the Agreement states, in relevant part:

**Minimum Commitment; Volume Forecasts.  The annual minimum order** volume for Product to be ordered by Company from Co-Packer **is 200,000 total cases in each year** (12 month period from inception) of the Term of this Agreement ("Minimum Commitment"). For any Renewal Term, agreed upon minimum volume requirements will be mutually negotiated by Parties, provided, however, that if the Parties fail to agree upon new minimums, the current Minimum Commitment requirements shall remain in place … Notwithstanding the foregoing, **if Company's purchase orders**, in the aggregate as of the end of any year during the Term or Renewal Term, as applicable**, fail to specify quantities of Product at least equal to the Minimum Commitment** for such year as provided in this Section 2, **Co-Packer, in its sole discretion, may send Company a written notice (including an invoice) of its purchase shortfall, which notice will create a binding obligation on Company to purchase or pay for the balance** of Company's Minimum Commitment.

Co-Pack Agreement ¶ 2 (emphasis added).

Paragraph 3 of the Agreement states, in relevant part:

**Manufacture Exclusively at the Facilities and Exclusively for Company.  Co-Packer shall manufacture**, produce, package and store the Products… **exclusively for Company and shall not produce**, sell or otherwise dispose of such Products or use, disclose (directly or indirectly) the Specifications, to manufacture for, or distribute **or sell**

2

**products to, any third parties** or for Co-Packer's own benefit. Co-Packer is prohibited from selling or donating the Products, non-conforming or otherwise, without the explicit written consent of Company.

*Id.* ¶ 3 (emphasis added). In the same vein, Paragraph 21 of the Agreement provides that ADF's recipes and specifications will be kept confidential and that Ascot Valley will not "make any use whatsoever at any time of such Proprietary Information other than to comply with its obligations under this Agreement." *See id.* ¶ 21.

Paragraph 6 of the Agreement states, in relevant part:

**Raw Materials, Ingredients; Packaging Materials**. Co-Packer shall be responsible for timely procurement of and payment for all raw materials and ingredients used in the manufacture and production of the Products ("Raw Materials" and "Ingredients", respectively) and all packaging materials used for the Products (the "Packaging Materials" and collectively with Raw Materials and Ingredients, the "Materials"). . . . Co-Packer shall bear sole responsibility for all risk of loss or damage to such Materials while the same are in its care, custody or control. . . . **If Company terminates this Agreement prior to the expiration** of the Initial Term or Renewal Term for any reason (other than "for cause"), **Company shall reimburse Co-Packer for Materials already purchased by Co-Packer** for Products ordered by Company prior to the effective date of such termination.

*Id.* ¶ 6 (emphasis added).

Between July 29, 2015 through January 19, 2022, ADF made various orders under the Co-Pack Agreement. *See* Def.s' Resp. to Pl.'s Rule 56.1 Stmnt. ¶ 7. In conjunction with those orders, ADF submitted purchase orders to Ascot Valley, and Ascot Valley issued invoices to ADF upon manufacturing ADF's orders. *See id.* ¶ 8.

## II.    Alleged Breaches

In September 2021, ADF discovered that a competitor of one of ADF's customers was selling meatless meatballs that appeared to be the same as ADF's meatless meatballs. Pl.'s Resp. to Def.'s Stmnt. Of Undisputed Material Facts ("Pl.'s Resp. to Def.'s Rule 56.1 Stmnt.") ¶ 10, ECF No. 105-1. ADF sent an email to Ascot Valley requesting assurances that Ascot Valley was

3

not selling ADF's meatless meatballs to a third party, but Ascot Valley did not provide the requested assurances.  *See id.*

On October 11, 2021, Ascot Valley sent ADF a letter alleging that ADF had breached the Co-Pack Agreement by not ordering the 200,000 minimum number of cases during the previous term year of the Agreement.  *See id.* ¶¶ 11-12 (citing Potter Decl., Ex. G, Letter dated Oct. 11, 2021 (the "Shortfall Notice"), ECF No. 110-7.  The Shortfall Notice stated, "[t]his letter shall serve as notice on behalf of Ascot to ADF that ADF's purchase orders during the Term year July 19, 2020-July 28, 2021 failed to specify quantities of Product at least equal to the Minimum Commitment for such year, as required under Section 2 of the Agreement."  Shortfall Notice at 1. The Shortfall Notice enclosed an invoice for the alleged shortfall in the amount of $821,761.95, and stated a due date of November 10, 2021.  *See id.* at 4; Pl.'s Resp. to Def.'s Rule 56.1 Stmnt. ¶ 22.

### III.    Unpaid Order Invoices and Termination

Between October 7 and November 12, 2021, Ascot Valley issued five invoices to ADF for orders that Ascot Valley fulfilled under the Co-Pack Agreement, but which have unpaid balances totaling $100,706.96.  *See* Pl.'s' Rule 56.1 Stmnt ¶¶ 9-13, 15.

On October 22, 2021—*i.e.*, 20 days before the due date of the invoice attached to the Shortfall Notice—Ascot Valley sent ADF a letter purporting to terminate the Agreement effective January 20, 2022 for failure to pay the invoice attached to the Shortfall Notice.  *See* Pl.'s Resp. to Def.'s Rule 56.1 Stmnt. ¶ 23.  The October 22 letter provided a ninety-day window during which termination could be averted if "otherwise agreed to by Ascot in writing," and proposed an amended Co-Pack Agreement as an alternative to termination.  *Id.*

On January 21, 2022, Ascot sent ADF a letter stating that it had terminated the Agreement effective January 20, 2022.  *See* Potter Decl., Ex. K, Letter dated Jan. 21, 2022 (the "Termination

Letter"), ECF No. 110-11.  The Termination Letter also stated that "ADF is obligated under the Agreement to reimburse Ascot for the cost of unique raw materials and packaging purchased by Ascot on behalf of ADF, in the amount of $365,429.08."  *See id.* at 1; Pl.'s Resp. to Def.'s Rule 56.1 Stmnt. ¶¶ 24-25.  Also attached to the Termination Letter were invoices for: (1) the manufacturing and packaging expenses; (2) the alleged minimum purchase shortfall of $821,761.95; and (3) the five invoices for orders that Ascot Valley had fulfilled but ADF had not paid for, totaling $100,706.96.  *See* Termination Letter at 3-8; Def.s' Resp. to Pl.'s Rule 56.1 Stmnt. ¶ 14.  In all, the invoices totaled $1,287,897.99.  *See* Termination Letter at 2.  ADF's Managing Director later confirmed that the invoices are accurate and that they remain unpaid.  *See* Def.s' Resp. to Pl.'s Rule 56.1 Stmnt. ¶¶ 17-19.  But ADF disputes that it "owes" Ascot Valley these amounts, *see id.* ¶ 14, for various reasons including that Ascot Valley allegedly breached the provisions of the Co-Pack Agreement prohibiting production of the products for third parties.  *See id.*

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1]  "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  When the

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing materials in the record. *See* Rule 56(c)(1)(A).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). And the Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F. 3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)). Nonetheless, it is well-established that "'[t]he mere existence of a scintilla of evidence in support of the [non-movant] plaintiff's position will be insufficient' to defeat a summary judgment motion," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)), and that the non-movant must create more than "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

## DISCUSSION

ADF moves for summary judgment on Ascot Valley's claims for breach of contract, promissory estoppel, and account stated; Ascot Valley cross-moves for summary judgment on its account stated claim as to the invoices for unpaid orders. The Court addresses the cross-motions below, taking each claim in turn.

### I.    Breach of Contract

On its breach of contract claim, Ascot Valley seeks damages in the amounts of: (1) $821,761.95 (for failure to order a minimum quantity of 200,000 cases), and (2) $100,706.96 (for ADF's failure to pay for goods sold, delivered, and invoiced to ADF), plus pre-judgment and post-judgment interest.  *See* Compl. ¶ 88, ECF No. 1.  ADF argues that Ascot Valley's breach of contract claim with respect to the minimum order requirement fails as a matter of law because of Ascot Valley's failure to provide adequate written notice of the alleged shortfall, which ADF describes as a condition precedent to triggering liability for a shortfall under the Agreement.  For reasons explained below, the Court disagrees.

Under New York law, "a condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43 (N.Y. 2009) (internal quotation marks and citation omitted).  Conditions precedent "are not readily assumed" and must be expressed in "unmistakable language."  *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap.*, Inc., 821 F.3d 297, 305 (2d Cir. 2016); *see also Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008) ("New York courts are cautious when interpreting a contractual clause as a condition precedent.").  Although "talismanic words are not required," terms giving rise to a condition precedent generally include language such as "if," "on condition that," "provided that," "in the event that," "subject to," and similar "linguistic conventions."  *Bank of N.Y. Mellon*, 821 F.3d at 305-06.  Moreover, "[w]here a contract explicitly states that a party's obligations are 'unconditional,' . . . courts have generally found that any condition precedent is inherently in conflict with such a provision."  *Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 219 (S.D.N.Y. 2003) (collecting cases).

Here, ADF argues that liability for failure to meet the minimum purchase requirement is triggered under the Co-Pack Agreement only if Ascot Valley first sends ADF a written notice of the alleged shortfall. *See* Def.'s Mem. at 6. Paragraph 2 of the Co-Pack Agreement states that if ADF's "purchase orders, in the aggregate as of the end of any year during the Term or Renewal Term, as applicable, fail to specify quantities of Product at least equal to the Minimum Commitment" of 200,000 cases, then Ascot Valley, "in its sole discretion, may send [ADF] a written notice (including an invoice) of its purchase shortfall, which notice will create a binding obligation on Company to purchase or pay for the balance of Company's Minimum Commitment." Co-Pack Agreement ¶ 2. According to ADF, the "binding obligation" to purchase or pay for any balance on the minimum purchase requirement is only triggered by provision of such written notice. *See* Def.'s Mem. at 6. And although Ascot Valley did provide ADF with a written notice of shortfall on October 11, 2021, ADF argues that this notice was insufficient under the Co-Pack Agreement because it was defective for various reasons, including that it miscalculated the relevant period for meeting the 200,000 cases minimum order requirement. *See id.* at 7.

The Court need not address the adequacy of Ascot Valley's notice because it concludes that the provision of such notice is *not* a condition precedent to trigger liability for a shortfall on the minimum purchase requirement. That is because Paragraph 2 states that, in the event of a purchase shortfall, Ascot Valley "may" send a written notice to ADF, but not that such notice is a prerequisite to liability. Courts have interpreted the use of the word "may" in this context as specifying the *procedure* for providing notice of a breach, not as establishing a condition precedent to liability. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 101 (S.D.N.Y. 2020) (holding that language indicating that a party "*may* make demand" as "merely set[ting] out the procedures by which a party . . . *may* pursue relief"). Here, the Co-Pack Agreement unambiguously establishes an obligation for ADF to make an "annual minimum order volume" of

"200,000 total cases in each year." Co-Pack Agreement ¶ 2. That obligation exists regardless of whether Ascot Valley provides a written notice of a shortfall, which the Co-Pack Agreement states it "may" do in order to specify the *means* by which Ascot Valley may provide such notice and seek relief from ADF. The Agreement does not say, in unmistakable language, that such notice is necessary to trigger liability for a shortfall. Accordingly, such notice is not a condition precedent to liability for a shortfall.[2]

ADF also argues that Ascot Valley's breach of contract claim fails for failure to establish an actual shortfall, because Ascot Valley has not accurately identified when the term year in question began for purposes of calculating the minimum 200,000 cases purchase order requirement. *See* Def.'s Mem. at 10. Ascot Valley responds by pointing to undisputed evidence that, between July 29, 2020 and June 28, 2021, ADF ordered only 166,445 cases of the product. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 6-8. While ADF argues that July 29 is not the correct date for calculating the term year, *see* Def.'s Mem. at 7-8, it has not established that Ascot Valley's interpretation—which is based on the fact that July 29, 2015 is the date on which the Co-Pack Agreement was originally signed— is so unreasonable that summary judgment is warranted.

Accordingly, ADF's motion for summary judgment is denied as to Ascot Valley's breach of contract claim.

## II.     Promissory Estoppel

On its promissory estoppel claim, Ascot Valley seeks damages in the amount of $365,429.08, representing the total expenses it incurred for raw materials and custom packaging

---

[2] Because the Court concludes that written notice is not a condition precedent, it does not address ADF's additional argument that the notice provided by Ascot Valley was deficient under the terms of the Co-Pack Agreement. Nor does the Court consider Ascot Valley's arguments that the Court should reject ADF's condition precedent argument for other reasons, such as ADF's failure to plead it in ADF's Answer. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 3-4, ECF No. 105.

unique to ADF in connection with the unordered balance on the 200,000 cases minimum order requirement, plus pre-judgment and post-judgment interest.  *See* Compl.  ¶¶ 98-99, 102.  ADF argues that Ascot Valley's promissory estoppel claim should be dismissed in light of the written Co-Pack Agreement, which it argues addresses the issue of raw materials and custom packing.  *See* Def.'s Mem. at 11-12.  As explained below, the Court disagrees.

Under New York law, promissory estoppel requires "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  Promissory estoppel generally applies "only where there is no written contract, or where the parties' written agreement is unenforceable for some reason." *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *9 (S.D.N.Y. Mar. 24, 2009) (internal quotation marks and citation omitted).  But the mere "existence of a written contract does not automatically foreclose all promissory estoppel claims." *Id.* at *9.  "Promissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement— for example, the Statute of Frauds or a failure of consideration." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013).

Here, ADF argues that any claim by Ascot Valley for promissory estoppel arising from expenses it incurred relating to raw materials and packaging is barred because the Co-Pack Agreement addresses those issues—specifically, in Paragraph 6.  *See* Def.'s Mem. at 11.  But Ascot Valley correctly notes that Paragraph 6 of the Co-Pack Agreement addresses claims for such expenses only in the context of *early termination* of the agreement; it does not address the situation here, where Ascot Valley incurred expenses to ensure it could fulfill orders consistent with ADF's minimum purchase requirement, only for ADF to allegedly fail to meet that obligation.  *See* Pl.'s Opp'n at 9-10; Co-Pack Agreement ¶ 6 (providing for "reimbursement" for such expenses if ADF

"terminates this Agreement prior to the expiration"). There is no written contract addressing the situation presented here, and so Ascot Valley's promissory estoppel claim is not barred as duplicative of its breach of contract claim. *See Curtis Props. Corp. v. Greif Cos.*, 653 N.Y.S.2d 569 (N.Y. App. Div. 1997) ("[A] party is not precluded from proceeding on both breach of contract and quasi-contract theories . . . where [the] contract does not cover the dispute in issue[.]").

### III.    Account Stated

On its account stated claim, Ascot Valley seeks damages of $1,287,897.99—consisting of (1) $821,761.95 for the minimum purchase shortfall, (2) $365,429.08 for raw materials in packaging that it bought in anticipation of ADF's orders, and (3) $100,706.96 for orders that Ascot Valley fulfilled, but which ADF never paid for—along with pre-judgment and post-judgment interest. *See* Compl. ¶¶ 63, 73, 81; Pl.'s Opp'n at 11; Pl,'s Mem. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mem.") at 4, ECF No. 114. ADF moves for summary judgment on this claim. Ascot Valley cross-moves for partial summary judgment in connection with the $100,706.96 worth of orders that it fulfilled but which ADF never paid for. For reasons explained below, the Court concludes that summary judgment is inappropriate on this claim.

To prevail on a claim for account stated, a plaintiff must establish the following elements: "'(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated.'" *Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp., Inc.*, No. 09 Civ. 9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" *IMG Fragrance Brands*, 679 F. Supp.

2d at 411 (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)).

Here, there is no dispute that the amounts sought in connection with this claim were presented in the form of seven invoices. *See* Termination Letter. ADF acknowledged that the invoices were accurate and that they remain unpaid. *See* Def.s' Resp. to Pl.'s Rule 56.1 Stmnt. ¶¶ 17-19. And ADF kept the invoices. *See* Pl.'s Mem. at 4. But ADF argues that the claim nevertheless fails for various reasons. For reasons stated below, the Court disagrees.

### A.      Invoice for Minimum Purchase Obligation

With respect to the invoice regarding ADF's alleged failure to meet its minimum purchase obligation, ADF notes that an account stated claim "cannot be used to create liability where none otherwise exists," Def.'s Mem. at 12 (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54-55 (2d Cir. 2011))—and argues that it cannot have any liability on the minimum purchase order requirement because Ascot Valley failed to fulfill the notice provision of the Co-Pack Agreement. *Id.* at 13. But, as explained above, this argument fails because the notice provision is not a condition precedent to the minimum purchase order requirement. The Court therefore cannot grant summary judgment to ADF on the account stated claim as to the invoice for the minimum order shortfall.

### B.      Invoice for Raw Materials and Packaging

With respect to the invoice for raw materials and packaging, ADF denies any liability with respect to these expenses because the Co-Pack Agreement provides for reimbursement of these items only in the event of early termination. Def.'s Mem. at 13-14. That is true, but it does not undermine Ascot Valley's account stated claim. Rather, it simply demonstrates that its account stated claim as to this invoice is distinct from, and not duplicative of, its breach of contract claim. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Where a

claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative."). ADF offers no other basis for summary judgment on this aspect of the account stated claim. Accordingly, the Court therefore cannot grant summary judgment to ADF on the account stated claim as to the invoice for raw materials and packaging.

### C.    Invoices for Product Orders

As to the five unpaid invoices for product orders, ADF is correct that Ascot Valley's account stated claim simply mirrors its breach of contract claim. If an enforceable contract exists, an account stated claim is duplicative of a breach of contract claim when the two claims "arise from the same facts . . . and do not allege distinct damages." *NetJets*, 537 F.3d at 175. Here, if Ascot Valley ultimately prevails on its breach of contract claim as to the unpaid invoices, then dismissal of the account stated claim as to these invoices will be proper.[3] "If [a] plaintiff can prove an enforceable contract, then it will be able to recover under [that] cause of action, and the [essentially identical] account stated claim can be dismissed." *Media Tenor Int'l AG v. Medco Health Sols., Inc.*, No. 13 Civ. 7223, 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) (internal quotation marks and citation omitted). But the Court declines to dismiss the claim at this stage of the litigation. There has been no final determination yet as to Ascot Valley's breach of contract claim, and ADF contends that the breach of contract claim will ultimately fail given Ascot Valley's alleged breach of the Agreement through its violation of the non-exclusivity provision—which ADF argues excuses its own obligations under the contract. *See* Def.'s Opp'n to Pl.'s Mot. for Partial Summ, J. ("Def.'s Opp'n") at 6-11, ECF No. 115. Where the existence of an enforceable contract remains in dispute, a plaintiff may continue to pursue alternative theories of liability. *See*

---

[3] This also appears to be true with respect to claims arising from the failure to meet the minimum purchase order obligation under the Co-Pack Agreement—the breach of contract claim and the account stated claim as to this issue seek the same damages and are essentially the same claim.

*Trend & Style Asia HK Co. Ltd. v. Pac. Worldwide, Inc.*, No. 14 Civ. 9992, 2015 WL 4190746, at *6 (S.D.N.Y. July 10, 2015).  And if ADF ultimately establishes that "an enforceable contract does not exist, [Ascot Valley] may still maintain an account stated claim if [it] also seeks to establish [ADF's] underlying liability through a quasi-contractual claim, such as quantum meruit."  *See Kaiburr Sys. LLC v. Tower 05, Inc.*, No. 22 Civ. 399, 2023 WL 7183183, at *2 (N.D.N.Y. Nov. 1, 2023).

But for the same reasons, the Court declines to grant summary judgment to Ascot Valley as to this aspect of its account stated claim.  While this appears to be a relatively straightforward situation of unpaid invoices for products that were delivered as ordered, Ascot Valley's breach of contract claim as to these unpaid shipments—on which it has not moved for summary judgment— should be resolved first, with resolution of the account stated claim necessary only if it is ultimately determined that an enforceable contract does not exist.[4]

Accordingly, the parties cross-motions as to the account stated claim are denied.

---

[4] ADF also argues that, even if Ascot Valley may proceed on its account stated claim as to invoices for the unpaid product orders, it should only be permitted to do so with respect to three particular invoices totaling $53,451.96, and not with respect two invoices that, while described in the Complaint, are not enumerated "under account stated."  *See* Def.'s Opp'n at 12.  The Court rejects this argument.  All relevant invoices are clearly identified in the Complaint and attached to it as exhibits, *see* Compl. ¶ 14; Compl., Ex. E.  And Count I of the Complaint, the account stated claim, specifically states that "Plaintiff repeats and restates each of the allegations in the preceding paragraphs as though fully set forth" under the Count.  Compl. ¶ 68.  In any event, Rule 15(b) permits amendment to pleadings to conform to evidence obtained through discovery, to allow a party to raise an unpleaded issue, and while the Rule refers to amendment during and after trial, "courts have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment." *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N. J.*, 894 F. Supp. 2d 288, 336 n.44 (S.D.N.Y. 2012) (collecting cases).  Accordingly, even if the Court were to determine that amendment were necessary here (which it does not), it would permit such amendment under Rule 15(b).

## CONCLUSION

For the reasons given above, ADF's motion for summary judgment is **DENIED**, and Ascot Valley's motion for partial summary judgment is also **DENIED.**

The Clerk of Court is respectfully requested to terminate ECF Nos. 108 and 11.

SO ORDERED.

Dated: February 6, 2026
      New York, New York

DALE E. HO
United States District Judge

15